UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                                   Case Number 14-20178

v.                                                  Honorable David M. Lawson

DERRICK HAYWOOD,

        Defendant.

_____/

## ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE

Defendant Derrick Haywood has filed a motion asking the Court to reduce his prison sentence to time served under the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. He has about two years left on his ten-year sentence, and he has exhausted his administrative remedies. The government concedes that Haywood has exhausted his administrative remedies, but it argues that he has not shown extraordinary or compelling reasons for the relief he requests, and that applying the factors listed in 18 U.S.C. § 3553(a) militate against it. Because Haywood is a medically vulnerable individual who has served nearly two-thirds of his prison sentence and is confined at a Bureau of Prisons (BOP) facility that has done a poor job of limiting the spread of the novel coronavirus, the relevant factors favor Haywood's position. The Court will grant the motion.

I.

In May 2014, Haywood pleaded guilty to possessing a firearm as a convicted felon and conspiring to distribute controlled substances. He led a drug trafficking conspiracy that had distributed over 45,000 illegally obtained oxycodone pills. Along the way, he also possessed a firearm, despite his previous felony convictions. Haywood and six others transported the pills

from Detroit, Michigan to Columbus, Ohio where they were distributed. The Honorable Avern Cohn sentenced him to concurrent prison terms of 120 months, to be followed by three years of supervised release. Haywood is scheduled to be released on September 16, 2022, having served just over 63% of his sentence.

Haywood presently is confined by the Bureau of Prisons (BOP) at FCI Milan in Michigan, a minimum-security facility that houses roughly 1,362 inmates. As of August 4, 2020, two inmates and one staff member were infected with COVID-19, three inmates had died from COVID-19, and 98 inmates had been infected and recovered from the virus. *See* https://www.bop.gov/coronavirus/. According to a recent report, 55 staff have tested positive, 54 have recovered and returned to work, and one is pending recovery. The report does not disclose how many staff or inmates have been tested.

Haywood is 43 years old and suffers from hypertension and chronic kidney disease. He also says that he is prediabetic. He contends that his medical conditions increase his vulnerability to complications from COVID-19 if he were to become infected by the coronavirus. He argues that the living conditions in the prison make it difficult to isolate himself from other inmates, exacerbating his risk. Haywood says that although his offenses were serious, he has no history of violence, and his positive record in prison demonstrates reform.

After exhausting his administrative remedies, Haywood, through counsel, filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, on July 23, 2020. The government filed a response and Haywood filed a reply.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. §

3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). Haywood relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served, *first*, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," *second*, if "extraordinary and compelling reasons warrant such a reduction," and *third*, if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (en banc) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it").

The government concedes that Haywood has exhausted his administrative remedies, although it stops short of acknowledging that his medical predisposition to COVID-19

complications amounts to "extraordinary and compelling reasons" to justify a sentence reduction. It argues against release mainly because the factors in section 3553(a) do not favor it, nor do the Sentencing Commission's policy statements. It insists that compliance with the Sentencing Commission's policy statement is mandatory, and points to one line in section 1B1.13 that requires the prisoner to prove lack of dangerousness. But that requirement is a condition of 3582(c)(1)(A)(ii). Haywood has invoked section 3582(c)(1)(A)(i), which contains no such requirement.

Although proof of lack of dangerousness is not an element the defendant must prove under section 3582(c)(1)(A)(i), it is not irrelevant. It is a factor incorporated in section 3553(a), which must be "consider[ed]" before release for extraordinary and compelling reasons may be allowed. *See* 18 U.S.C. § 3553(a)(2)(C) (requiring a sentencing court to consider "the need . . . to protect the public from further crimes of the defendant"). And any sentence reduction also must account for "the seriousness of the offense," the need "to promote respect for the law," and "afford adequate deterrence to criminal conduct." *Id.* § (2)(A), (C). These factors are to be considered together with the prisoner's circumstances to arrive at a conclusion that they are sufficiently extraordinary and compelling to justify a sentence reduction.

The government asserts, accurately, that drug dealers are typically seen as a threat to the community even if they have not exhibited violent behavior. Haywood has been a drug dealer for over 14 years, and his criminal history shows offenses for distribution of oxycodone, cocaine, and marijuana, and illegal firearm possession. In this case, his sixth felony conviction, Haywood was arrested in possession of $50,000 received after a drug delivery. Additionally, Haywood has a history of several failed attempts at parole; the government believes that signals that Haywood would not follow the rules should the Court release him on home confinement.

The nature and circumstances of Haywood's underlying offenses, including his leadership of a drug distribution network and possession of a firearm, indeed are serious. However, "evidence of post sentencing rehabilitation may plainly be relevant to 'the history and characteristics of the defendant.'" *Pepper v. United States*, 562 U.S. 476, 491 (2011). "Several courts have . . . considered a defendant's rehabilitation in granting compassionate release." *United States v. Parker*, No. 2:98-CR-00749-CAS-1, 2020 WL 2572525, at *11 (C.D. Cal. May 21, 2020) (citations omitted). That proves true even when the defendant qualified as a "career offender" and had previously been convicted of several drug offenses and for carrying a concealed weapon. *See United States v. Goins,* No. 11-CR-20376, 2020 WL 3064452, at *1 (E.D. Mich. June 9, 2020).

Haywood has taken steps to improve himself while incarcerated. He has consistently taken education courses, starting in 2015 and continuing into this year, indicating an intention to matriculate into society as a productive member upon release. Some of those courses include "Introduction to Real Estate", "Employment Skills", "Job Savvy", "Life Skills", "Employment Skills", and family focused courses like "Inside/Out Dad" and "Parenting". In addition, he has been compliant while in prison and does not have any disciplinary record. He has served a substantial portion of his custody term, and he asks to be released under home confinement, which will mitigate any threat to the community that he now may pose. He has a plan to live with his wife and mother upon release, both of whom wrote letters of support on his behalf.

Moreover, Haywood will be serving a three-year term of supervised release, and the Court is authorized to extend that term by an amount "that does not exceed the unserved portion of the original term of imprisonment." 18 U.S.C. § 3582(c)(1)(A). That extended portion can be served in home confinement. For those reasons, it is reasonable to conclude that Haywood "'is not a danger to the safety of any other person or to the community.'" *Cf. Lassister*, 2020 WL 3639988,

at *2 n.1. Although the crimes here were serious and involved the possession of drugs and guns, they did not involve violence.

The sentence imposed at the time was not greater than necessary to achieve the goals stated in section 3553(a). However, reducing that sentence will not undermine those goals.

To establish extraordinary and compelling reasons for the relief he requests, Haywood points to the conditions of his physical health, arguing that he is vulnerable to complications if he were to contract COVID-19. And he is understandably concerned about being infected with the coronavirus. "The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications or death. Because there is no current vaccine, the Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." *United States of America v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

Haywood was diagnosed with hypertension in 2007, which is a risk factor associated with COVID-19 according to the CDC. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. In addition, he is prediabetic. Perhaps most concerning, however, is Haywood's chronic kidney disease, which has progressed to Stage III.

Haywood's chronic kidney disease, which is a confirmed risk factor for COVID-19, has steadily worsened over time. In May 2015, Haywood's glomerular filtration rate (GFR), which is

considered the optimal way to measure kidney function, was 70. For a man of Haywood's age, a GFR of 99 or above is considered normal. *See* https://www.kidney.org/atoz/content/gfr. By February 13, 2018, his GFR had dropped to 53, and by May 2020, it was 47. A GFR below 60 indicates the prevalence of complications from chronic kidney disease and an increased risk of cardiovascular disease. *See* https://pubmed.ncbi.nlm.nih.gov/20718588/.

Haywood also is experiencing current complications from his chronic kidney disease. During Haywood's May 2020 screening, the examining doctor noted "likely hypertensive neuropathy." Hypertensive neuropathy can be dangerous for people with chronic kidney disease. The National Library of Medicine recommends patients with hypertensive nephropathy take "aggressive blood pressure-lowering" measures to slow progression to end stage renal disease, which can be fatal. https://pubmed.ncbi.nlm.nih.gov/20718588/. Haywood's consistent decline in GFR signals a legitimate concern that his chronic kidney disease will continue to worsen.

It is not clear whether Haywood's medical conditions are being monitored properly at FCI Milan. Haywood argues they are not. The medical reports indicate that Haywood received more frequent blood pressure testing when he was at FCI Cumberland.

But even if his medical conditions are being monitored properly, Haywood is at an increased risk for COVID-19. Courts have found that similar combinations of ailments have created high risk factors, without analyzing the amount of regular care the prisoner is receiving. *See United States v. Young*, No. CR19-5055 BHS, 2020 WL 2614745, at *3 (W.D. Wash. May 22, 2020) (granting compassionate release where hypertension and chronic kidney disease placed prisoner at a higher risk for severe complications from COVID-19); *United States v. Dhavale*, No. 19-MJ-00092, 2020 WL 1935544, at *6 (D.D.C. Apr. 21, 2020) (granting pretrial release due to defendant's prediabetes and hypertension, "which puts him at higher risk for more severe,

debilitating illness from COVID-19"); *United States v. Lassister*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) (listing chronic kidney disease, obesity and diabetes as known risk factors for the disease); *Malam v. Adducci*, No. 20-10829, 2020 WL 2616242, at *4–5 (E.D. Mich. May 23, 2020) (prisoner's hypertension in addition to her obesity put her "at substantially heightened risk of severe illness and/or death from COVID-19"); *United States v. Readus*, No. 16-20827-1, 2020 WL 2572280, at *3 (E.D. Mich. May 21, 2020) (prediabetes in combination with other health risk merited compassionate release). The combination of Haywood's hypertension and chronic kidney disease, in addition to his heightened risk for developing diabetes, are serious medical conditions that could increase Haywood's chances of fatal complications from COVID-19.

Those medical conditions, of course, do not increase Haywood's risk of contracting COVID-19. But they do expose him to increased risks of severe complications if he becomes infected. He has a legitimate concern that he is at risk for contracting the virus in a prison setting, and especially while at FCI Milan. "[T]he crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ortiz*, 2020 WL 3640582, at *2 (collecting cases; footnotes omitted).

Despite mitigation efforts, there have been at least 101 confirmed cases of COVID-19 at FCI Milan among inmates and staff, resulting in three deaths. These numbers create legitimate cause for concern of the virus's spread.

The defendant has described sufficiently the extraordinary and compelling circumstances warranting a sentence modification, based on the serious risk to his health posed by the ongoing (and recently accelerating) coronavirus pandemic.

III.

The government has agreed that Haywood has exhausted his administrative remedies. He also has established "extraordinary and compelling" reasons for relief within the meaning of 18 U.S.C. 3582(c)(1)(A)(i). The balance of the other pertinent factors weigh in favor of his request for relief.

Accordingly, it is **ORDERED** that the defendant's motion for compassionate release (ECF No. 164) is **GRANTED**.

It is further **ORDERED** that the defendant's term of custody is **REDUCED** to time served.

It is further **ORDERED** that this order is stayed for up to fourteen days to allow the Bureau of Prisons to verify the defendant's residence and release plan, to make appropriate travel arrangements, and to ensure the defendant's safe release after the defendant is quarantined. The defendant shall be released as soon as a residence is verified, a release plan is established, appropriate travel arrangements are made, quarantine is complete, and it is safe for the defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure the defendant's safe release, the parties shall immediately notify the Court and show cause why the stay should be extended.

It is further **ORDERED** that under 18 U.S.C. § 3582(c)(1)(A), the defendant must serve a "special term" of supervised release of 24 months (in addition to the supervised release term previously ordered). During that special term, the defendant must confine himself to his place of residence, except for work, medical appointments, religious services, and purchasing necessities.

The defendant will be subject to GPS location monitoring for the first 360 consecutive days of his home confinement. However, if the defendant is in full compliance with his conditions of supervised release, the probation officer, after 180 days, may discontinue GPS location monitoring. The Court will enter an amended judgment and commitment.

    It is further **ORDERED** that the defendant must provide to the probation office in the district where he will be released the complete address where he will reside upon release.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Dated:  August 7, 2020